Erin Rose Ronstadt, SBN 028362
Kyle James Shelton, SBN 027379
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
kyle@ronstadtlaw.com
*Attorneys for Plaintiff*

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Shantala Ramaiah, a widowed woman,<br><br>Plaintiff,<br><br>v.<br><br>The Lincoln National Life Insurance Company, plan insurer and fiduciary, and Employee Group Insurance Plan – Fully Insured Components, an ERISA benefit plan,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

For her claims against The Lincoln National Life Insurance Company, plan insurer and fiduciary ("Lincoln") and Employee Group Insurance Plan – Fully Insured Components, an ERISA benefit plan ("Plan"), Plaintiff Shantala Ramaiah ("Ms. Ramaiah" or "Plaintiff") alleges as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

2. As an employee of Jacobs Engineering, Inc. ("Jacobs"), Ms. Ramaiah was a participant in the Employee Group Insurance Plan (the "Plan").

3. Jacobs is a Texas company headquartered in Dallas, Texas.

4. The Plan is a purported ERISA benefit plan established and maintained by Jacobs for the benefit of its employees.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

5. Lincoln insures and administrates the claim for long-term disability ("LTD") benefits for the Plan.

6. Lincoln fully insures Jacobs employees for LTD benefits pursuant to Policy Number GF3-880-467229-01 ("the Policy").

7. Jacobs is a Plan fiduciary as defined by ERISA.

8. At the time Ms. Ramaiah sought LTD benefits under the Plan, Lincoln insured the Plan, administered claims for Jacobs under the Plan, acted on behalf of the Plan, and acted as an agent of Jacobs and/or the Plan.

9. Lincoln makes final decisions regarding the payment of disability benefits for the Plan and to administer claims under the Plan.

10. Lincoln has a duty to administer claims under the Plan prudently and in the best interests of all Plan participants and beneficiaries.

11. Ms. Ramaiah currently resides in Maricopa County, Arizona and has been a resident of Arizona at all times since becoming a Plan participant and is a citizen of the United States of America.

12. Lincoln has its principal place of business in the state of Pennsylvania. Lincoln is a citizen of Pennsylvania.

13. Lincoln is licensed and authorized to do business in Maricopa County, Arizona.

14. Lincoln resides and is found in Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132, and 28 U.S.C. § 1391.

15. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

16. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

## GENERAL ALLEGATIONS
### Ms. Ramaiah's Disability

17. Ms. Ramaiah is a Senior Bridge Professional and worked at Jacobs on bridge construction projects from June 29, 2009 until she stopped working due to disability on September 30, 2022.

18. Ms. Ramaiah attempted to return to work part-time in May 2023. However, after four months of part-time work, her health deteriorated, and she collapsed on September 19, 2023. Ms. Ramaiah was unable to return to work after that date.

19. Ms. Ramaiah suffers from Long COVID, Postural Tachycardia Syndrome ("POTS"), Mast Cell Activation Syndrome ("MCAS"), Hypermobile Ehlers Danlos Syndrome ("EDS"), dysautonomia, moderate lumbar degenerative disc disease, Depression, and Generalized Anxiety Disorder.

20. Collectively, Ms. Ramaiah's medical conditions prevent her from performing the material duties of her Own Occupation or Any Occupation under the Policy.

21. Ms. Ramaiah is under the regular care of multiple physicians.

22. Ms. Ramaiah became Disabled while insured under the Policy.

23. Throughout the history of her claims, Ms. Ramaiah has repeatedly submitted proof of loss corroborating her Disability at Lincoln's behest.

24. To be eligible for LTD benefits, Ms. Ramaiah must meet the definition of "Disabled" and "Disability" as they are defined in the Policy.

25. Under the Policy, "Disabled" means that:

> i. That during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial duties of [her] Own Occupation; and
>
> ii. Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

26. The Policy defines "Own Occupation" as "the Covered Person's occupation

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

that [she] was performing when [her] Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy."

27. The Policy defines "Any Occupation" as "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."

28. Ms. Ramaiah has, at all times since the date her Disability began, been eligible for LTD benefits due to her inability to perform the duties of her Own Occupation or Any Occupation.

29. Ms. Ramaiah received and exhausted her short-term disability ("STD") benefits.

***LTD Claim***

30. On February 25, 2023, Ms. Ramaiah received a letter from Lincoln stating that her STD benefits would end on March 31, 2023, and Lincoln would assess her claim for LTD benefits.

31. Ms. Ramaiah contracted the COVID-19 virus on or about September 7, 2022.

32. Ms. Ramaiah developed physical symptoms including heart palpitations, chest pain, shortness of breath, and severe fatigue. She also began to feel worsening depression and anxiety.

33. On September 16, 2022, Ms. Ramaiah reported to an emergency room with heart palpitations. She was referred to cardiology for work up.

34. Ms. Ramaiah sought a cardiology consultation on October 1, 2022. Ms. Ramaiah underwent evaluation which did not reveal a cardiac-based disorder.

35. Ms. Ramaiah consulted her primary care provider, internist Zaheer Shah, MD, on October 17, 2022. Dr. Shah diagnosed Long COVID and completed an APS indicating Ms. Ramaiah's extreme fatigue, heart palpitations, and shortness of breath.

36. Ms. Ramaiah developed hypersensitivity. She described the sensation as a

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

"constant buzz" in her heart and vagus nerve dysfunction.

37. As a bridge engineer, Ms. Ramaiah's job is complex with high stakes regarding public safety.

38. On November 15, 2022, Dr. Shah wrote a letter supporting disability for Ms. Ramaiah citing CDC guidance on post-COVID treatment and opining, "Patient's job duties include project management, risk abatement, and bridge engineering for fast-paced projects, whose duties impose significant stress and demands which the patient is unable to perform at this time without likely exacerbation of mental and physical symptoms described above. The negative results of laboratory and cardiac diagnostics conducted to date does not negate the severity and need for rest of the patient. Per the [ ] CDC guidance Key Points: 'Objective laboratory or imagining findings should not be used as the only measure or assessment of a patient's wellbeing; normal laboratory or imaging findings do not invalidate the existence, severity, or importance of a patients post-Covid symptoms or conditions.'"

39. Dr. Shah provided an update two weeks later on November 30, 2022, stating, "[H]er heart palpitations remain clinically significant and prevent her return to work. Working at this time may increase the risk of permanent heart injury or progression of her long Covid symptoms."

40. At an appointment with Dr. Shah on the same date, Ms. Ramaiah reported she had developed some dizziness, but expressed her hope and desire to return to work in January 2023.

41. In a letter dated December 30, 2022, Dr. Shah confirmed that Ms. Ramaiah's physical symptoms had not abated despite treatment. He opined, "She was prescribed and continues to take medication...Patient is restricted from stress inducing activities including moderate to strenuous physical activities and work. These protocols are supported by NCBI research on vagal dysfunction and long Covid symptoms."

42. On January 2, 2023, Ms. Ramaiah experienced spontaneous and extreme

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

tachycardia. Emergency room personnel concluded her anti-anxiety medication coupled with Long COVID nervous dysfunction were the cause.

43. Ms. Ramaiah returned to Dr. Shah who wrote a letter dated January 25, 2023 indicating a treatment plan of vagus nerve stimulation, continued rest, chiropractic treatment for neck subluxation that may be affecting the vagus nerve, and ceasing the anxiety medication in favor of cognitive behavioral therapy and EMDR modalities. Dr. Shah opined, "A return to demanding and stressful conditions prior to symptoms resolution can lead to erosion of progress and return to original severe condition. The patient has just enough health to take care of her children and continue healing."

44. In the following months, Ms. Ramaiah pursued cognitive behavioral therapy and EMDR treatment.

45. On February 10, 2023, Network Medical Review Company internal medicine medical reviewer Temisan Etikerentse, MD, evaluated Ms. Ramaiah's medical records and spoke with Dr. Shah. The physicians agreed that Ms. Ramaiah was disabled, and her condition should be re-evaluated around March 1, 2023.

46. On the same date, Network Medical Review Company infectious medicine medical reviewer Jason Wirtz, MD, evaluated Ms. Ramaiah's medical records and spoke with Dr. Shah. The physicians agreed that Ms. Ramaiah was disabled, and her condition should be re-evaluated around March 1, 2023.

47. Also on February 10, 2023, Network Medical Review Company psychiatry medical reviewer, Wander Segura, MD, opined that there was no support for impairment or restrictions and/or limitations from a psychiatric perspective.

48. On March 15, 2023, Lincoln requested a social media investigation report on Ms. Ramaiah. There was no explanation in the claims manager's notes for why Lincoln thought such a report was necessary.

49. A vocational evaluation dated March 16, 2023, concluded that Ms. Ramaiah's

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

occupation was performed at the light physical demand level and that part-time opportunities were available for bridge engineers.

50. The social media investigation was completed on March 21, 2023, and did not reveal anything of significance.

51. Dr. Shah completed an Attending Physician Statement ("APS") on April 4, 2023, that supported continued disability and recommended re-evaluation on May 1, 2023.

52. Ms. Ramaiah sought treatment for her mental health conditions with Mark Treegoob, PhD. Dr. Treegoob completed an APS on April 10, 2023. His response indicated that that Ms. Ramaiah had moderate to severe depression and anxiety. These conditions were exacerbated by the trauma of Ms. Ramaiah's husband's death. On January 13, 2023, Ms. Ramaiah endorsed a score of 19 on the General Anxiety Disorder-7 scale.

53. Dr. Treegoob estimated that Ms. Ramaiah would need at least five months of assisted outpatient treatment including cognitive behavioral therapy, before considering a return to work. Assisted outpatient treatment is an alternative to inpatient hospitalization for mental health services.

54. In April of 2023, Lincoln obtained file reviews from employee physicians rather than from the vendor, Network Medical Review Company ("NMR").

55. On information and belief, Lincoln chose to use its own reviewers the second time to obtain opinions unfavorable to Ms. Ramaiah.

56. On April 12, 2023, Lincoln's internal psychiatry reviewer, Dr. Randy Rummler, opined that Ms. Ramaiah was not disabled by her mental health conditions because, "Medical management is not consistent with apparent level of severity for the reported condition. There is no evidence of referral to a psychiatrist or therapeutic dosages of medication for anxiety as would be expected and anticipated in the presence of severity of symptoms causing impairment." The only comment Dr. Rummler made about Dr. Treegoob was that the notes, "reflect several visits only, main issues noted are with palpitations, response to medication."

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Dr. Rummler neither discussed Dr. Treegoob's proposed treatment, nor did he consider or discuss Ms. Ramaiah's dangerous cardiac response to SSRI psychiatric medications.

57. On the same date, Lincoln's internal family medicine reviewer, Dr. Janet Mullins, opined, "Per review of medical records, it appears there is no medical basis upon which to support [restrictions and limitations] related to self-reported issues with palpitations and fatigue from 11/01/2022 through the present date and ongoing." Dr. Mullins did not explain why she disagreed with Dr. Shah, Dr. Etikerentse, and Dr. Wirtz. Nor did she provide any explanation for why Ms. Ramaiah's self-reported symptoms were not credible.

58. Lincoln's claim notes consistently include the term "self-reported" regarding Ms. Ramaiah's heart palpitations. The term is used 14 times within the claim file prior to Lincoln's decision on Ms. Ramaiah's application.

59. The Policy permits claimants to receive benefits for disabling "Non-Verifiable Symptoms" for up to 24 months.

60. "Non-Verifiable Symptoms" means the Covered Person's subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine. Such symptoms may include, but are not limited to, dizziness, fatigue, headache, loss of energy, numbness, pain, ringing in the ear, and stiffness.

61. Lincoln denied Ms. Ramaiah's claim for benefits in a letter dated April 25, 2023, stating that she had not been impaired since November 1, 2022, and relied entirely on Lincoln's own internal physician opinions without mentioning prior favorable medical reviews from Lincoln's vendor NMR (the "Denial").

***LTD Appeal***

62. On December 21, 2023, Ms. Ramaiah appealed Lincoln's denial of LTD benefits with the assistance of counsel (the "Appeal"). The Appeal included updated medical records, materials from medical literature concerning POTS, MCAS, EDS, and Dysautonomia. The Appeal also included information on Long COVID guidance from the CDC, the Mayo Clinic,

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

the U.S. Department of Health and Human Services, and the National Institute of Health. The Appeal contained additional supportive treating provider assessments, including a letter and assessment form by a neurologist with expertise in POTS and EDS.

63. Since the Denial, Ms. Ramaiah had been diagnosed with physiological disorders POTS, EDS, MCAS, and dysautonomia, which have been strongly linked with Long COVID. Ms. Ramaiah's new medical records provided objective testing showing Ms. Ramaiah meets the formal diagnostic criteria for these disorders, including tilt table testing, physical examination, and laboratory testing.

64. Ms. Ramaiah explained her myriad of symptoms, including severe fatigue, heart palpitations, shortness of breath, dizziness, joint pain, weakness, adrenaline rushes, brain fog, headaches, and difficulty regulating body temperature.

65. Ms. Ramaiah's treating neurologist noted, "[Patient] is clearly disabled and has extensive limitations. [Patient] would be incapable of even a low stress job. The [Patient] is only able to sit for about 1 hour at a time and about 2 hours total in a day. [Patient] requires frequent change of positions, typically every 30 mins or so. [Patient] can stand/walk for less than 20 mins at one time and about 2 hours total in a day. With many activities, including but not limited to sitting, standing, walking, lifting and more; [Patient's] symptoms such as severe pain, exhaustion, weakness, etc. are exacerbated. [Patient] must lay down regularly throughout the day to rest. [Patient] can lift no more than 20 pounds rarely and nothing repetitive. [Patient] is currently limited on outings due significant triggers that exacerbate their complex symptoms. [Patient] struggles with multiple ADLs and requires the assistance of others for multiple activities including, but not limited to preparation of food, cooking, cleaning, transportation and more. [Patient] shows inability to work due to the incapability to focus due to multiple, complex disabling conditions such as significant pain and other debilitating symptoms."

66. During its LTD Appeal review, Lincoln obtained two more biased medical reviews from its internal physicians on January 14, 2024. The internal psychiatry reviewer, Dr.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Marcelle Leet, opined that Ms. Ramaiah had not been impaired since October 3, 2022. This reviewer also ignored Dr. Treegoob's assisted outpatient treatment modality and the difficulty with Ms. Ramaiah's cardiac response to the most common and effective class of anti-depressants known as SSRIs.

67. Lincoln's occupational medicine medical reviewer, Dr. Robert Swotinsky, gave a scathing opinion that ignored and misrepresented the evidence, ultimately claiming that Ms. Ramaiah "demonstrated the capacity to perform full-time work of heavy physical demand" based solely on the results of Ms. Ramaiah's treadmill stress test from October 2022. The reviewer also incorrectly stated Ms. Ramaiah stopped working in September 2023 due to "stress."

68. On March 6, 2024, Ms. Ramaiah responded to Lincoln's medical reports with a response from her neurologist, updated medical records, further medical literature supporting her diagnoses, a declaration by Ms. Ramaiah, and a professional vocational report which concluded that Ms. Ramaiah would be competitively unemployable for part or full-time work in her occupation.

69. Lincoln responded on March 19, 2024, with a reply from the occupational medicine physician who continued to opine broadly on neurological disorders outside of his specialty.

70. On April 3, 2024, Ms. Ramaiah replied again, disagreeing with Lincoln and requesting that Lincoln make a determination on the Appeal.

71. Based on the medical evidence in its possession at the time of the Denial, Lincoln should have never terminated Ms. Ramaiah's LTD claim.

72. The additional medical evidence provided with the Appeal further substantiated Ms. Ramaiah's Disability under the Plan.

73. On April 8, 2024, Lincoln issued a final administrative determination, terminating Ms. Ramaiah's LTD benefits (the "Final Denial").

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

74. In reaching the Final Denial, Lincoln relied entirely on its biased and inadequate internal physician reviewers.

75. These physicians had not physically examined or even spoken with Ms. Ramaiah or her treating providers. Their opinions are based solely on a review of the medical records.

76. In its Final Denial, Lincoln failed to explain why it credited these physician reviewers over Ms. Ramaiah's treating providers and unreasonably relied on their opinions when it knew or should have known that they conducted inadequate and biased reviews.

77. A plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." See Black & Decker Disability v. Nord, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003).

78. Lincoln's reliance on their internal peer reviewers and avoidance of independent reviewers was an abuse of discretion and contrary to its duty to perform a full and fair review.

79. Lincoln did not in any way refute or even challenge Ms. Ramaiah's vocational evidence at any point while processing her Appeal.

80. In its Final Denial, Lincoln failed to properly consider Ms. Ramaiah's treating provider conclusions, restrictions, and limitations.

81. Ms. Ramaiah exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(All Defendants)**

82. All other paragraphs are incorporated by reference.

83. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

84. The Plan is governed by the laws of the State of Texas to the extent not preempted by federal law.

85. The Plan represents LTD coverage and a promise to provide these benefits until Ms. Ramaiah is no longer Disabled under the terms of the Plan.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

86. Ms. Ramaiah has claimed the benefits under the Plan to which she is entitled.

87. Defendants Lincoln and the Plan wrongfully denied those benefits.

88. Lincoln abused its discretion and acted in its own best financial interests, depriving Ms. Ramaiah of a full and fair review in violation of 29 C.F.R. § 2560.503-1.

89. Ms. Ramaiah reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that he would receive benefits under the Plan until she reaches age 67, or until she was no longer Disabled.

90. Lincoln and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

91. Even if Jacobs properly delegated discretionary authority to Lincoln, by operation of Tex. Ins. Code § 1701.062, the standard of review applicable to this court's decision concerning Plaintiff's entitlement to LTD benefits is *de novo.*

92. In light of Lincoln's wholesale and flagrant procedural violations of ERISA, Ms. Ramaiah is also entitled to *de novo* review. See *Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

93. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Ramaiah is informed and believes that Lincoln makes claims decisions based on the claims resources and financial risk it faces on certain claims.

94. Lincoln failed to conduct a full and fair review.

95. Lincoln did not properly consider all of the available evidence when terminating Ms. Ramaiah's benefits.

96. In reaching its Denial and Final Denial, Lincoln failed to properly consider Ms.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

Ramaiah's medical evidence, valid symptomology, and treating provider assessments.

97. Lincoln exclusively relied on medical file reviews provided by in-house medical consultants and non-examining physicians.

98. On information and belief, Lincoln used internal reviewers in evaluating Ms. Ramaiah's claim because it knew that the internal reviewers' recommendations would be unfavorable for the continuation of Ms. Ramaiah's benefits.

99. Lincoln abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, Lincoln continued to rely on these peer reviewers despite their obvious bias and mistakes.

100. On information and belief, Lincoln provides its reviewers with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

101. Lincoln failed to even consider Ms. Ramaiah's independent vocational evidence.

102. Lincoln routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

103. Lincoln's biased medical reviewers mischaracterized evidence to support their conclusions that Ms. Ramaiah can work.

104. Lincoln failed to properly consider the opinions of Ms. Ramaiah's treating providers.

105. Lincoln has a history of parsimonious claims handling, which is directly relevant to this Court's analysis of the standard of review, including whether to confer Lincoln with discretionary authority, and it is also relevant to this Court's consideration of Lincoln's procedural violations.

106. Lincoln's ERISA violations were more than de minimis.

107. Lincoln failed to engage in a "meaningful dialogue" regarding Ms. Ramaiah's claim.

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

108. Lincoln engaged in procedural irregularities to serve its own financial best interests.

109. On information and belief, Lincoln's motivation in terminating Ms. Ramaiah's LTD benefits was to eliminate a long-term financial liability.

110. Plaintiff is informed and believes that Lincoln continues to experience financial issues as a company, including shortages in its reserves for the payment of claims.

111. Plaintiff is informed and believes that, as a company, Lincoln has increased its efforts to deny otherwise valid claims as a result of its financial considerations.

112. Plaintiff is informed and believes that Lincoln did not set aside adequate reserves to pay Ms. Ramaiah's claim.

113. On information and belief, Ms. Ramaiah was a victim of Lincoln's corporate efforts to drive profitability.

114. Under the *de novo* standard of review, to be entitled to benefits, Ms. Ramaiah need only prove by a preponderance of the evidence that she is Disabled.

115. Even under the abuse of discretion standard of review, Lincoln abused its discretion, because its decision terminating Ms. Ramaiah's disability benefits was arbitrary and capricious and unduly influenced by Lincoln's financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

116. Ms. Ramaiah is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of Lincoln's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and financial motivations and circumstances surrounding Lincoln's decision to terminate Ms. Ramaiah's LTD claims.

117. Under the *de novo* standard of review, Ms. Ramaiah is entitled to discovery regarding, among other things, the credibility of Lincoln's medical reviews and Lincoln's lack

of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan* for Contract Employees, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the *de novo* standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

118. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Ramaiah is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

119. Ms. Ramaiah is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the status quo ante before LTD benefits were wrongfully terminated.

120. Ms. Ramaiah is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

121. Pursuant to 29 U.S.C. § 1132(g), Ms. Ramaiah is entitled to recover her attorneys' fees and costs incurred herein.

WHEREFORE, on all claims, Ms. Ramaiah asks for entry of judgment against Defendants as set forth in this Complaint, which includes:

A. All past and future LTD benefits under the terms of the Plan;

B. Clarifying and determining Ms. Ramaiah's rights to future benefits under the terms of the Plan;

C. For any other benefits Ms. Ramaiah may be entitled to receive under the Plan due to her disability;

D. All other equitable relief that is proper as a result of Lincoln's breaches of fiduciary duties;

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

**RONSTADT LAW, PLLC**
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

E. For an award of Ms. Ramaiah's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 12-351;

F. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

G. For such and further relief as the Court deems just, equitable, and reasonable.

Dated: April 30, 2024.

RONSTADT LAW, PLLC

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Kyle James Shelton
*Counsel for Plaintiff*